[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: DENIAL OF MOTION FOR ARTICULATION
Contrary to the defendants' claims, set forth in its Memorandum, the court did not grant the prejudgment attachment by a one page order or without setting forth the manner in which it arrived at that decision or the probable cause standard applied.
Attached is a twelve (12) page transcript of the court's oral decision on the defendants' application to dissolve the plaintiffs' mechanics liens in the amount of $7,751,698, and the court's reasoning beginning on page six (6) of that transcript as to the basis and reasons for granting a prejudgment attachment in the amount of $5,445,929 upon the plaintiffs' requested application for a prejudgment attachment in the amount of $7,751,698. That transcript is attached as Exhibit A.
The Motion for Articulation is denied.
GORMLEY, J.
EXHIBIT A
GORMLEY, J. CT Page 976
THE COURT: Good afternoon.
On the record, the Court is going to dispose of the pending matters before with reference to the general cases involving Curran VS. Iroquis Gas. I'm going to deal with the mechanic's lien matter first and then secondly the application for prejudgment remedy. The mechanic's lien the case is Iroquis which is listed as the plaintiff in their application to discharge the mechanic's lien. I'll leave it up to the clerk to put the proper docket numbers in.
With reference to the mechanic's lien, the defendant in that case, Curran Associates, Inc. — Otis Eastern and Michael Curran/Otis Eastern Services, Inc. have filed seven mechanic's liens in seven individual towns in individual amounts totalling $7,751,698. Arising out of work performed and materials it supplied to Iroquis Gas transmission system LP and Iroquis Pipeline Operating Company. This matter is here on a motion by the plaintiff to discharge those liens. The parties have stipulated and agreed that the Court's decision herein shall be the ruling on all similar motions filed in the other judicial district dealing with the issue. The owner Iroquis has moved to dissolve the liens and relies upon the language of paragraph 11.6 of the contract between the parties for the construction of a pipeline, gas pipeline in Connecticut which it claims clearly and unequivocally amounted to a lien waiver. The contractor maintains that the language of paragraph 11.6 of the contract is ambiguous and when read in conjunction with paragraph 16.7 entitled Non-Recourse Obligation, preserves the contractor's right to file a mechanic's lien. Final argument was heard yesterday and the Court has reviewed the briefs filed by both parties. Due to certain existencies of the situation, the Court has agreed to expedite this matter and to deliver its opinion orally without the filing of a formal Memorandum of Decision. This oral recitation will constitute the Court's decision in this case. To the extent that either CT Page 977 party seeks further articulation they may request it.
The Court finds that the language of paragraph 11.6 although poorly and inartfully drawn, constitutes a waiver of the right to file a mechanic's lien by the contractor and therefore the mechanic's lien is dissolved and all mechanic's liens are dissolved. The Court specifically relies upon the cases of Pero V. — excuse me, Pero Building Company Vs. Smith, 6 Ct. App. at 180 and Baliowins V. Minor 209 Ct. at 212 in support of its decision. Although the language in these cases may be stronger and more supportive of waiver than the language of paragraph 11.6, the language herein does support a waiver. In Pero the contract language stated that the contractor agrees that no mechanic's claims or liens will be filed or maintained by the contractor. The applicable language in this case is "the contractor shall indemnify and stay harmless the company from all statutory liens upon the work or work site arising out of the service, labor, equipment and material or any of them furnished by the contractor or any of its subcontractors, and shall keep the work and work site free and clear of all lien claims and encumbrances arising from the performance of the contract or the contractor or any of its subcontractors. If the contractor shall keep the premises free and clear of all statutory liens, it would be unreasonable to conclude that it as the potential larges claimant could file and maintain mechanic's liens on its own behalf.
The use throughout this clause of both the words contractor and subcontractor is inconsistent with the claim that the lien waiver only referred to third party claims of subcontractors. The claim made in the brief that the use of the word contractor in the clause was solely for the purpose of protecting the owner from claims of unapproved subcontractors is without merit.
Finally the Court does not believe CT Page 978 that the language of paragraph 16.7 in any way grants lien rights to the contractor. That clause found among nine miscellaneous clauses sets forth the contractors' understanding that he could not proceed against any partner in the company for any breach of law or the contract itself, but would be limited to to company and its assets. That clause was inserted for the benefit of the partners and should not be given an interpretation to create rights not previously provided or grant rights previously waived. The use of the word assets is limiting language meaning the partners in their assets are immune from any claim made by the contractor. The language consistent with the right of the contractor to proceed against these assets of the company pursuant to an application for prejudgment remedy or to execute against those assets post-judgment. This judgment is stayed until December 17th, 1992.
With reference to the application for a prejudgment remedy in the case where Curran, Et al. are the plaintiffs against Iroquis Gas, movement in that matter is the plaintiff in a civil action sounding in breach of contract, promissory estoppel, quantimerial, fraud and negligent misrepresentation. Arising out of services it performed and materials it furnished to the defendant as the general contractor in the construction of a 51-mile natural gas pipeline through Connecticut from Sherman to Milford. The contract, Plaintiff's Exhibit 26, at the hearing sets forth the agreement of the parties.
The plaintiff has filed similar suits in at least I believe four other judicial districts other than Milford and in each has sought a prejudgment remedy. In each case in the amount of $7,751,698. The parties have again stipulated and agreed that this Court's decision concerning the prejudgment remedy shall constitute the decision in the case and all the other JD's. As a brief and by no means thorough recitation of the facts in this case the contractor was acting that same capacity in building the gas CT Page 979 pipeline for the defendant in the State of New York from the Canadian border to Connecticut. during 1991. It apparently had not initially contemplated laying or building the pipeline in Connecticut until the following year to connect up to its service in Long Island, New York. Apparently its plans changed in the early summer of 1991. Iroquis approached Curran to see if he could complete the job in Connecticut by the end of 1991. Curran indicated he could as long as the owner had all the necessary permits, rights of way and materials available and ready and on schedule. Curran promised to add additional personnel in Connecticut raising his work force to over 1,100 persons. Iroquis indicated that it would meet all of these requirements of the contract, Exhibit 26 was executed requiring commencement of work August 12th, substantial completion by December 21st and final completion by September 1, 1992. That provision was modified by addendum #1 to the contract dated July 18, 1991 calling for commencement of work on August 12th and completion of work by December 15th, 1991. Substantial completion means that the pipeline was ready for use. The evidence supports the facts and the conclusion that the contractor begin the work on time and was ready, willing and capable completing at a minimum substantial completion by November 30th, 1991. The contract date was not achieved and this can only be attributed to the acts and deficiencies of the owner Iroquis. The Court finds no fault on the part of the contractor. Those deficiencies included a lot of stump removal sites, pipe supply not up to specification, late delivery of pipe and a lack of proper permits and rights of way that prohibited the contractors to bring in crews to operate efficiently and on time. As a result, the work was not completed on time. The contractor suggested coming back in the spring to complete the work and the owner insisted on getting the line in service as soon as possible and made many promises, inducements, concessions and waivers of contract provisions to the contractor to get the line in service as soon as possible. The contractor in reliance CT Page 980 upon these considerations remain on the job, worked holidays and large amounts of overtime and the line went into service on approximately January 24, 1992. Again, the Court herein has made it clear that it would take considerable time to prepare a thoughtful Memorandum of Decision on this complicated matter and the parties have encouraged the Court to decide the issues of probable cause and attendant damages in fashion subject to a subsequent motion to articulate on some or all of the items. This the Court will do recognizing the pitfalls it may encounter from the unhappy litigants.
The Court will utilize the Summary of Claims originally marked as Plaintiff's Exhibit 62 for Identification as its reference point as these are clearly agreed upon by the parties as the matters at issue and the matter that both attorneys have argued and made reference to in their briefs. The law concerning prejudgment remedy hearings was recently reiterated in the case of Calfee V. Ullman 224 Ct, page 29. These have — the Court in that case have described these hearings as not intended to be full-scale trials on the merits of the plaintiff's claims. The plaintiff does not have to establish that he will prevail only that there is probable cause to sustain the validity of its claim. The Court's role is to determine probable success by weighing probabilities. Moreover this weighing process applies to both legal and factual issues. The defendant has contested this application on both factual and legal grounds. No claim was made, however, that contract clause 11.6 which was the subject of this Court's decision with reference to the mechanic's lien would in any way prevent the granting of a prejudgment remedy and thus this Court determines that any argument with reference to that has been waived.
With these standards in mind, the Court finds that there is probable cause to sustain the validity of eight of the plaintiff's nine claims in the following amounts on one or more CT Page 981 of the theories in the complaint:
1.) Stump removal $457,500.
 2.) Rock jacket coated pipe not to specification and uncured. $143,545.
3.) Pipe delivery delays — $128,348.
 4.) Out of sequence windowed stream crossings — $530,600.
 5.) Additional overhead and waiting time through February 15th, 1992 — $1,188,608.
6.) Winter work — $1,340,276.
7.) Retainage — $1,007,000.
 8.) Unpaid approved change orders — $650,052.
The Court does not find probable cause for the claim in the amount of $2,047,500 for the change from wet to dry stream crossings for 91 crossings at $22,500 each. Therefore, the application for a prejudgment remedy is granted in the total amount of $5,409,929.
The judgment in this case shall also be stayed until December 16th, one day prior to the stay in the decision with reference to the discharge in mechanic's lien.
Off the record.
(Off the record discussion)
THE COURT: The plaintiff's motion or application for disclosure of assets of the defendant made part of this application for prejudgment remedy is also granted.
CERTIFICATION
I, Patricia Neznek, hereby certify that the foregoing CT Page 982 is a true and accurate transcription to the best of my ability of the official tapes taken in said cause before Honorable Joseph Gormley in Superior Court, Judicial District of Ansonia/Milford at Milford.
Dated at Milford, Connecticut this 3rd day of December, 1992.
PATRICIA NEZNEK Court Monitor
ROSE ESPOSITO Court Transcriber
CT Page 982